UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| IZABELA TARASIEWICZ, THOMAS CROSIER, *Plaintiffs* § § § § § § § § § § | Case No. SA-22-CV-00816-XR |
| vs. | |
| PNC BANK, NATIONAL ASSOCIATION, *Defendant* | |

# ORDER

On this date, the Court considered Defendant's motion to dismiss (ECF No. 12), Plaintiffs' response (ECF No. 19), and Defendant's reply (ECF No. 20). After careful consideration, the Court issues the following order.

## BACKGROUND

Plaintiffs Izabela Tarasiewicz and Thomas Crosier filed this action to prevent the foreclosure of their home located at 4042 Wilderness Ridge, San Antonio, Texas (the "Property") by Defendant PNC Bank, National Association ("PNC").

In July 2014, non-party Sergio Chavez ("Chavez") executed a Note and Deed of Trust in favor of Compass Bank, in connection with a construction loan secured by the Property in the principal amount of $455,036,00. *See* ECF No. 8-1 at 17. PNC is the current mortgagee and holder of the Note. *See* ECF No. 1-1 at 31.

On or about February 2, 2022, non-party TEN400, LLC purchased the Property at an HOA foreclosure sale. *Id.* ¶¶ 48, 66. On February 25, 2022, Plaintiffs purchased the Property from TEN400, LLC for $20,000.00 through Special Warranty Deed following an HOA foreclosure sale,

subject to PNC's superior lien.[1,2] ECF No. 8 ¶¶ 10, 11, 13, 15. At the time of the purchase, the Property was allegedly abandoned and had broken windows, rotting wood, and mold. *Id.* ¶¶ 16–17. To preserve it, "Plaintiffs immediately began substantial construction," which included repairing the roof, gutting the floors and walls, and replacing the windows and doors. *Id.* ¶ 18. Plaintiffs estimate that they have invested $233,504.83 in improvements to the Property. *Id.* ¶ 14.

Sometime after the purchase, Plaintiffs searched the county records and discovered that the Property was scheduled for a trustee's sale on July 5, 2022. *Id.* ¶ 12. Plaintiffs allege that neither they nor the previous homeowner received notice of the upcoming sale as required under the Deed of Trust. *Id.* ¶ 38; *see* ECF No. 8-1, Ex. B § 16.

On July 1, 2022, Plaintiffs filed suit in the 225th Judicial District Court of Bexar County, asserting a claim for breach of contract and seeking to enjoin Defendant from selling the Property. ECF No. 1-1 at 21–27. The state court issued an *ex parte* temporary restraining order ("TRO"), preventing the foreclosure sale. *See id.* at 18–20. On July 27, 2023, PNC removed the case to this Court on the basis of diversity jurisdiction. ECF No. 1. Shortly thereafter, it moved to dismiss. ECF No. 5. In response, Plaintiffs filed their first amended complaint ("FAC"), mooting the pending motion to dismiss. In the FAC, Plaintiffs allege claims for (1) breach of contract; (2) quantum meruit; (3) unjust enrichment; and (4) suit to quiet title. ECF No. 8.

PNC now moves to dismiss the FAC for several reasons. ECF No. 12. First, PNC argues that Plaintiffs do not have standing to sue for breach of contract because they are not a party to or a third-party beneficiary of the Deed of Trust. ECF No. 12 at 6–7. Second, PNC argues that

---

[1] Plaintiffs have attached as exhibits to their Original Petition and First Amended Complaint copies of the Deed of Trust, *see* ECF No. 8-1, the Special Warranty Deed, and the Notice of the Substitute Trustee Sale, *see* ECF No. 1-1 at 28–35. The Supreme Court has held that in deciding a motion to dismiss, a court may consider documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[2] In 2022, the Bexar County Appraisal District appraised the Property at $824,900.00. ECF No. 8 ¶ 69.

Plaintiffs cannot support their claim for quantum meruit because they did not perform the repairs to the Property for PNC's benefit. *Id.* at 9–10. Third, PNC contends that Plaintiffs' unjust enrichment claim fails because the FAC does not allege that PNC "employed fraud, duress, or took undue advantage over the Plaintiffs." *Id.* at 12. Finally, PNC argues that Plaintiffs' suit to quiet title must be dismissed because the FAC acknowledges that Plaintiffs purchased the Property subject to PNC's valid lien. *Id.* at 12–13.

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must

contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

**II.   Analysis**

   **A.   Breach of Contract**

Plaintiffs allege that PNC breached the Deed of Trust by failing to provide notice to them, *see* ECF No. 19 ¶ 16,[3] and the former mortgagor. ECF No. 8 ¶ 27. In Texas, a claim for breach of contract requires "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the

---

[3] In their complaint, Plaintiffs allege that PNC failed to provide notice to Chavez. ECF No. 8 ¶ 27. But PNC contends that it provided notice to both Chavez and Plaintiffs. ECF No. 12 at 5–6. In their response, Plaintiffs tacitly acknowledge that PNC satisfied its notice obligation with respect to Chavez. *See* ECF No. 19 ¶ 15–16. Thus, to sustain their breach of contract claim, Plaintiffs pivot, instead arguing PNC failed to provide notice to *them*. *Id.* This argument assumes too much. First, it assumes that Plaintiffs have standing to bring a breach of contract claim under Chavez's deed of trust. Second, it assumes that PNC was contractually obligated to provide notice to Plaintiffs. Because the Court concludes otherwise below, it does not reach the merits of this argument.

4

plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.— Houston 2005, pet. denied)).

In Texas, "[p]arties are presumed to be contracting for themselves only." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan,* 345 F.3d 347, 362 (5th Cir. 2003). Thus, only parties to a contract have standing to sue, unless a third party to the contract can demonstrate that the contract was made for their benefit. *Kona Tech. Corp. v. S. Pacific Transp. Co.,* 225 F.3d 595, 602 (5th Cir. 2000). "To make such a showing, the third party must demonstrate that (1) it was not privy to the written agreement; (2) the contract was actually made for its benefit; and (3) the contracting parties intended for it to benefit by their agreement." *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 113 F. Supp. 3d 924, 936 (W.D. Tex. 2015), *aff'd sub nom. AIG Specialty Ins. Co. v. Tesoro Corp.*, 840 F.3d 205 (5th Cir. 2016); *see also Talman Home Fed. Sav. & Loan Ass'n of Ill. v. Am. Bankers Ins.,* 924 F.2d 1347, 1350–51 (5th Cir. 1991).

"The intention to contract or confer a benefit to a third party must be clearly and fully spelled out in order to show the contracting parties entered into the contract directly for the third party's benefit." *First Union Nat'l Bank v. Richmont Cap. Partner*, 168 S.W.3d 917, 929 (Tex. App.—Dallas 2005, no pet.) (citing *MCI Telecomms. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 641, 651 (Tex. 1999)). "Furthermore, any intent of the contracting parties to benefit a third-party is to be derived solely from the language of the contract." *Talman*, 924 F.2d at 1350–51. "The fact that a third party might receive an incidental benefit from a contract does not give that third party a right to enforce the contract." *First Union Nat'l Bank,* 168 S.W.3d at 929 (citing *MCI*, 995 S.W.2d at 651). "If there is any reasonable doubt as to the intent of the contracting parties to confer a direct benefit on the third party, then the third-party beneficiary claim must fail." *Id.* (citing *Dallas Firefighters Ass'n v. Booth Rsch. Grp., Inc.*, 156 S.W.3d 188, 192–93 (Tex. App.—Dallas

2005, pet. denied) and *Whitten v. Vehicle Removal Corp.*, 56 S.W.3d 293, 312 (Tex. App. —Dallas 2001, no pet.)). In sum, "'[u]nder Texas law, a non-party to a contract has a heavy burden when it claims third-party beneficiary status.'" *Staton Holdings, Inc. v. First Data Corp.*, No. Civ.A. 3:04–CV–2321P, 2006 WL 1343631, at *8 (N.D. Tex. May 16, 2006) (quoting *Missouri Pac. R.R. Co. v. Harbison–Fischer Mfg. Co.*, 26 F.3d 531, 540 (5th Cir. 1994)).

Here, the Deed of Trust evinces no intent to confer a benefit on a third party to the contract. It does not mention either Plaintiff or, for that matter, any third-party beneficiary. *See generally* ECF No. 8-1, Ex. B. Rather, the Deed of Trust was executed for the benefit of the contracting parties—PNC and Chavez—not on behalf of any subsequent purchasers of the Property. *Cf. Brumitt*, 519 S.W.3d at 103 ("'[W]e must begin with the presumption' that the parties contracted solely 'for themselves' and only a clear expression of the intent to create a third-party beneficiary can overcome that presumption." (quoting *Corpus Christi Bank & Tr. v. Smith*, 525 S.W.2d 501, 503–04 (Tex. 1975))). Because nothing in the Deed of Trust offers any basis for recognizing Plaintiffs as third-party beneficiaries, they fail to state a claim for breach of contract.

Plaintiffs point out that Texas law carves out a narrow exception to the "general rule" that "only the mortgagor or a party who is in privity with the mortgagor has standing to contest the validity of a foreclosure sale pursuant to the mortgagor's deed of trust." *Goswami v. Metro. Sav. & Loan Ass'n*, 819 S.W.2d 487, 489 (Tex. 1988) (citing *Estelle v. Hart*, 55 S.W.2d 510, 513 (Tex. Comm'n App. 1932, judgm't adopted) and *Mercer v. Bludworth*, 715 S.W.2d 693, 698 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.)). In addition to parties in privity with the mortgagor, parties with a legal or equitable interest in property have standing to challenge the sale of that property. *Id.* Standing to challenge a foreclosure sale, however, does not grant strangers to

the contract standing to sue for breach of the underlying security instrument.[4] Rather, Texas law is clear—as outlined above—that "a plaintiff must show either third-party beneficiary status or privity." *E.g.*, *Spraggins v. Caliber Home Loans, Inc.*, No. 20-CV-01906, 2020 WL 8366645, at *8 (N.D. Tex. Dec. 31, 2020) (quoting *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 141–42 (Tex. App.—Dallas 2012, no pet.)) (internal quotation marks omitted).

Because Plaintiffs are neither in privity with PNC nor third-party beneficiaries to the Deed of Trust, their claim for breach of contract must be dismissed.[5]

### B.     Quantum Meruit

"Quantum meruit is an equitable remedy which does not arise out of a contract[] but is independent of it." *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) (citing *Colbert v. Dall. Joint Stock Land Bank of Dall.*, 102 S.W.2d 1031, 1034 (Tex. 1937)). Recovery under quantum meruit is appropriate when non-payment results in unjust enrichment to the party benefitted by the work. *Id.* (quoting *City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (Tex. App.—Corpus Christi 1977, writ ref'd n.r.e.)). To recover, a claimant must prove that:

> (1) valuable services were rendered or materials furnished;
> (2) for the person sought to be charged;
> (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him;
> (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

---

[4] Plaintiffs cite no authority—and the Court finds none—applying this doctrine in the breach of contract context. *See generally* ECF Nos. 8, 19.

[5] In their responsive briefing, Plaintiffs also erroneously cite the Uniform Commercial Code for the proposition that they are secondary obligors and, as such, must receive notice before the disposition of the collateral. ECF No. 19 ¶ 17 (citing U.C.C. § 9-611(c)(1)–(3) (AM. L. INST. & UNIF. L. COMM'N 2022)). Assuming that Plaintiffs intended to cite the Texas counterpart of this provision, TEX. BUS. & COM. CODE § 9.611, they are mistaken. The UCC covers transactions "that create[] a security interest in personal property or fixtures." *Id.* § 9-109(a)(1). It expressly excludes "lien[s] on real property." *Id.* § 9-109(d)(11); *see Tremble v. Wells Fargo Home Mortgage, Inc.*, 478 F. App'x 164 (5th Cir. 2012) ("The UCC, however, does not govern the mortgage, a lien on real property." (citing BUS. & COM. § 1-109(d)(11))).

*Id.* (quoting *Bashara v. Baptist Mem'l Hosp.*, 685 S.W.2d 307, 310 (Tex. 1985)).

Here, Plaintiffs allege that they "were forced to make improvements to the Property . . . to preserve its condition and to keep it from deteriorating." ECF No. 8 ¶ 46. Plaintiffs assert that allowing foreclosure without reimbursement would be inequitable and that they "should be compensated for the price they paid in purchasing the Property in addition to the expenses they incurred." *Id.* ¶¶ 59, 61. As PNC points out, however, Plaintiffs fail to allege that they conferred valuable services and materials *to* PNC. Rather, as owners of the Property, Plaintiffs acknowledge that they made the repairs to "preserve its condition and to keep it from deteriorating." ECF No. 8 ¶ 46. "To recover in quantum meruit," however, "the plaintiff must show that his efforts were undertaken for the person sought to be charged; it is not enough to merely show that his efforts benefitted the defendant." *Truly v. Austin*, 744 S.W.2d 934, 937 (Tex. 1988) (citing *Bashara*, 685 S.W.2d at 310). While Plaintiffs allege that PNC received an incidental benefit insofar as the value of its collateral was preserved, they do not allege that they made the repairs for PNC's benefit. Accordingly, they have failed to state a claim for quantum meruit.

        C.        **Unjust Enrichment**

"When a defendant has been unjustly enriched by the receipt of benefits in a manner not governed by contract, the law implies a contractual obligation upon the defendant to restore the benefits to the plaintiff." *ED & F Man Biofuels LTD. v. MV Fase*, 728 F. Supp. 2d 862, 870 (S.D. Tex. 2010) (citing *Barrett v. Ferrell*, 550 S.W.2d 138, 143 (Tex. App.—Tyler 1977, writ ref'd n.r.e.)). Ordinarily, unjust enrichment is found "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (first citing *Pope v. Garrett*, 211 S.W.2d 559, 560, 562 (Tex. 1948); and then citing *Austin v. Duval*, 735 S.W.2d 647, 649 (Tex. App.—Austin 1987,

writ denied)). But unjust enrichment does not require wrongdoing; it may also occur when the defendant "passively received [a benefit] which it would [be] unconscionable to retain." *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied) (second alteration in original) (quoting *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex. App.—Corpus Christi 1987, writ denied)) (internal quotation mark omitted).[6]

Plaintiffs assert that they have spent $233,504.83 to prevent the Property from falling into disrepair. ECF No. 8 ¶ 14. Given these improvements, foreclosure would arguably represent an unconscionable windfall to PNC. Indeed, Plaintiffs allege that PNC intentionally delayed foreclosure proceedings "in an effort to receive the benefit of Plaintiffs' construction work without incurring any of the costs." *Id.* ¶ 52. Because foreclosure has not yet occurred, however, PNC has not retained the benefit of Plaintiffs' improvements to the Property. Accordingly, their claim for unjust enrichment is not ripe for adjudication. *See, e.g.*, *Garcia v. Bank of Am., N.A.*, No. 4:14-CV-2160, 2015 WL 12808271, at *2 (S.D. Tex. Mar. 23, 2015) (dismissing an unjust enrichment claim because "Garcia does not allege any foreclosure of the Property has occurred and has not plead any other facts that would show BANA gained any benefit."); *Miyayama v. Quality Loan Service Corp.*, No. 16-CV-413, 2017 WL 132836 at *4 (D. Nev. Jan. 13, 2017) (dismissing an unjust enrichment claim on ripeness grounds because "the foreclosure sale ha[d] not yet transpired").

---

[6] In *Heldenfels*, the Texas Supreme Court implied that some wrongdoing is necessary to sustain a claim for unjust enrichment. *Heldenfels Bros.*, 832 S.W.2d 39 at 42 ("Unjust enrichment is not a proper remedy merely because it 'might appear expedient or generally fair that some recompense be afforded for an unfortunate loss' to the claimant, or because the benefits to the person sought to be charged amount to a windfall." (quoting *Austin*, 735 S.W.2d at 649)). Most Texas courts have continued to apply the "passive receipt" doctrine after *Heldenfels*, however. *See RDG Ltd. P'ship v. Gexa Corp.*, No. 14-04-00679-CV, 2005 WL 949171, at *4 n.3 (Tex. App.—Houston [14th Dist.] Apr. 26, 2005, no pet.) (collecting cases).

### D.     Quiet Title

A suit to quiet title "exists 'to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of a better right.'" *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied) (quoting *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 387–88 (Tex. App.—Houston [1st Dist.] 2012, pet. denied)). "The elements of the cause of action to quiet title are that the plaintiff must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Id.* (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 1-10-873-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] 2011, no pet.). PNC contests the third element, arguing "Plaintiffs simply have not alleged facts to establish a superior right or interest to that of PNC." ECF No. 12 at 13. The Court agrees.

In their complaint, Plaintiffs acknowledge that they "purchased the Property subject to [PNC's] Deed of Trust." ECF No. 8 ¶ 11. In other words, they admit that PNC has a valid and enforceable right to the Property. Faced with this reality, Plaintiffs ground their claim on notice. That is, they argue that PNC failed to provide notice "pursuant to the Deed of Trust, Texas Property Code, [and the] UCC." ECF No. 19 ¶ 39. As mentioned above: (1) Plaintiffs have no standing as strangers to the Deed of Trust to enforce its provisions; and (2) the UCC is inapplicable to liens on real property. Plaintiffs' remaining argument—that PNC failed to provide notice under Texas Property Code—is similarly meritless.

Section 51.002(b)(3) of the Texas Property Code requires the foreclosing party to notify the debtor of the sale. But it imposes no obligation "that personal notice of a foreclosure be sent to persons not parties to the deed of trust." *Rodriguez v. Ocwen Loan Servicing, LLC*, 306 F. App'x 854, 856 (5th Cir. 2009) (per curiam) (quoting *Stanley v. Citifinancial Mortgage Co.*, 121 S.W.3d

811, 817 (Tex. App.—Beaumont 2003, pet. denied)) (internal quotation mark omitted). Because Plaintiffs are not parties to the Deed of Trust, they were not entitled to notice of the foreclosure sale under the Texas Property Code. *See* ECF No. 8-1, Ex. B (listing Chavez as the only borrower). Accordingly, Plaintiffs have failed to state a claim for quiet title.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 12) is **GRANTED**. Plaintiffs' claims for breach of contract, quantum meruit, and suit to quiet title are **DISMISSED WITH PREJUDICE**. Plaintiffs' claim for unjust enrichment is **DISMISSED WITHOUT PREJUDICE**. A final judgment pursuant to Rule 58 will follow.

It is so **ORDERED**.

**SIGNED** this 13th day of April, 2023.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE